**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 3:09MJ308** |
| | ) | |
| **ROLAND J. GRIFFIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant Roland J. Griffin's Motion *in limine*

(Docket. No. 8).  For the reasons set forth herein, Defendant's Motion *in limine* is DENIED.

**I.  BACKGROUND**

On June 17, 2009, the Defendant Roland J. Griffin was the subject of a traffic stop within

the special territorial jurisdiction of the United States.  The arresting officer performed a breath

test on the Defendant using an Intox EC/IR II, which indicated that the Defendant had a blood

alcohol concentration of .17 per 210 liters of breath.  He was arrested and charged with second-

offense driving under the influence ("DUI") in accordance with Virginia Code sections 18.2-266

and -270.  At trial, the Government intends to introduce a Certificate of Instrument Accuracy for

the Intox EC/IR II, as well as a Certificate of Blood Alcohol Analysis detailing the results of the

test.

The Defendant made his initial appearance in this Court on June 23, 2009, and was

released on a personal recognizance bond.  He thereafter filed the instant motion *in limine* and

the motion was argued on September 15, 2009 when the government offered evidence in support

of its position.

## II.  ANALYSIS

The Sixth Amendment to the United States Constitution states that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  According to Crawford v. Washington, 541 U.S. 36, 68 (2004), the Confrontation Clause prohibits the admission of testimonial statements of a witness unless the witness is unavailable at trial and the defendant had a prior opportunity to cross-examine such witness.  The Confrontation Clause only governs testimonial statements, which include "at a minimum prior testimony at a preliminary hearing, before a grand jury, or at a former trial," as well as police interrogations.  Id.  While there is no exhaustive definition, "testimonial" statements are also defined as including "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  Id. at 51-52.  Accordingly, nontestimonial statements are not governed by the Confrontation Clause and are, therefore, admissible without providing the opportunity to cross-examine.  See Whorton v. Bockting, 549 U.S. 406, 420 (2007) ("[T]he Confrontation Clause has no application to [out-of-court nontestimonial statements].").

In its recent decision in Melendez-Diaz v. Massachusetts, the Supreme Court held that certificates of analysis prepared by a lab analyst containing the type and weight of the substances in question were testimonial in nature.  129 S. Ct. at 2531-32 (2009).  The Court held that such certificates of analysis fell within the "core class of testimonial statements" addressed in the Confrontation Clause.  Id. at 2532 (quoting Crawford, 541 U.S. at 51 (2004)).  Because the

certificates were created expressly to prove elements of the charged offense and specifically

prepared for use at trial, the Court found that the certificates were "testimonial statements and

the analysts were therefore 'witnesses' for purposes of the Sixth Amendment." Id.  The

certificates of analysis were therefore not admissible at trial without the testimony of the

examining analyst, absent a showing that the analyst was unable to testify at trial and that the

defendant had a prior opportunity to cross-examine him.  Id.

However, the Certificate of Instrument Accuracy at issue in this case is a different type of

certificate.  The United States offers Exhibit 1, as introduced at the hearing on the motion, to

verify the calibration of the Intox EC/IR II used to perform the breath test on the Defendant in

lieu of the technician who calibrated the Intox EC/IR II and who will not be available at trial.  At

the same time, the arresting officer (Ranger Sargeant) will testify at trial, subject to cross-

examination on behalf of the Defendant, that she is certified in the operation of the Intox EC/IR

II and how she administered the test.  Indeed, as the unrebutted evidence established at the

hearing, the Intox EC/IR II is specially engineered such that the machine will not produce a

Certificate of Blood Alcohol Analysis (Government Exhibit 2) unless the machine satisfies,

while in operation, its own interior testing protocols to insure that the test is being administered

correctly and accurately.

The Court concludes that the Certificate of Instrument Accuracy is nontestimonial

evidence beyond the scope and reach of the Confrontation Clause.  Indeed, in Melendez-Diaz the

Court explicitly noted that:

> [W]e do not hold, and it is not the case, that anyone whose testimony may be
> relevant in establishing the chain of custody, authenticity of the sample, or *accuracy*
> *of the testing device*, must appear in person as part of the prosecution's case. . . .
> Additionally, documents prepared in the regular course of equipment maintenance

may well qualify as nontestimonal records.

Id. at 2532 n.1 (emphasis added); see also Larkin v. Yates, 2009 WL 2049991, n.2 (C.D. Cal.

July 9, 2009) (holding that Melendez-Diaz "specifically rejected the suggestion that the

Confrontation Clause required that every person whose testimony might be relevant to the

authenticity of a sample or accuracy of a testing device appear in person as part of the

prosecution's case."). It is clear, therefore, that a Certificate of Accuracy, introduced only to

verify the calibration of a testing device used by law enforcement, does not constitute testimony

"against" a defendant in the same way as a certificate of analysis offered to establish an element

of an offense. See United States v. Forstell, 2009 WL 2634666, at 5-6 (E.D. Va. Aug. 18, 2009)

("Certificates regarding such routine information fit squarely into the category of nontestimonial

records carved out by the Supreme Court."); see also H.B. 5007, 2009 Gen. Assem., 2009 Spec.

Sess. I (Va. 2009) (responding to Melendez-Diaz by removing the statutory requirement that a

certificate of accuracy be introduced for the results of a breath test to be admissible evidence in

DUI cases).

Unlike the certificates at issue in Melendez-Diaz, the Certificate of Accuracy in this case

only conveys information regarding the calibration and proper operation of the Intox EC/IR II.

Melendez-Diaz does not require the prosecution to produce a witness to testify that equipment

used to conduct a test, the results of which are later used in a criminal prosecution, was operating

correctly when the test was performed. Moreover, the Certificate of Accuracy was not prepared

with knowledge of any particular defendant's case, or specifically for use in any particular trial.

As Ms. Lohmann, Section Chief at the Virginia Department of Forensic Science, testified at the

hearing on the instant motion, technicians responsible for calibrating all breath test machines are

required, by both Virginia statute and the Virginia Administrative Code, to calibrate each

machine every six months, regardless of whether the machine will be used to procure breath test

results for DUI cases.  See Va. Code § 9.1-1101; 6 VAC § 40-20-30.  Furthermore, the United

States introduced testimony at the hearing from the officer who operated the Intox EC/IR II who

will seek to verify at trial that proper procedures were followed to ensure an accurate result from

the machine when the test was administered.  Cf. Grant v. Commonwealth, 2009 WL 2742377,

at *2-4 (Va. Ct. App. Sept. 1, 2009) (holding that a certified breath machine operator must testify

for a certification of accuracy and for the results of the test to be admissible).  The "primary

purpose" of calibration certificates, therefore, is not "to establish or prove past events potentially

relevant to later criminal prosecution."  Davis v. Washington, 547 U.S. 813, 822 (2006); see

United States v. Washington, 498 F.3d 225, 232 (4th Cir. 2007), cert. denied, 129 S.Ct. 2856

(noting that the machine used to test defendant's blood could "tell no difference between blood

analyzed for health-care purposes and blood analyzed for law enforcement purposes").

The Certificate of Accuracy that is to be used in this case serves only to certify that

routine calibration testing has been performed on the Intox EC/IR II, without regard to the

certificate's use against any particular defendant, or introduction to prove any element of an

offense.  Thus, the United States is not required to make available at trial the technician who

performed the calibration tests for the certificate to be admissible.[1]

### III.  CONCLUSION

---

[1]The Court is also constrained to note that while it is not a dispositive circumstance, the fact that the government offered unrebutted evidence that only three technicians are available to calibrate every six months the some 170 or so machines that are used in the entire state and who would have to also be available for trial testimony if the requested relief would be granted, presents the specter of absurd practical consequences.

For the reasons discussed herein, Defendant's Motion *in limine* (Docket No. 8) is

DENIED.

An appropriate order shall issue.

_____ /s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated:   September 22, 2009