**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

**UNITED STATES OF AMERICA,**                 )
                                              )
        **v.**                                )        **CRIMINAL NO. 3:09MJ308**
                                              )
**ROLAND J. GRIFFIN,**                        )
                                              )
        **Defendant.**                        )
_____)

## MEMORANDUM OPINION

This matter is before the Court on the Defendant Roland J. Griffin's motion for a

judgment of acquittal (Docket No. 23) pursuant to Fed. R. Crim. P. 29. The Court has reviewed

the submissions of the parties on the issue, and the parties have waived further briefing and oral

argument. The matter is therefore ready for resolution, the Court concluding that oral argument

would not aid in the decisional process. For the reasons set forth herein, the Defendant's motion

for a judgment of acquittal is DENIED.

## I.  BACKGROUND

On June 18, 2009, at approximately 7:45 P.M., National Park Ranger Chuck Lochart

observed a black GMC pickup blocking both lanes of travel on Grant Drive, a short distance

within the entrance to Fredericksburg and Spotsylvania National Military Park. (Tr. at 20.)

Upon approaching the vehicle, Ranger Lochart discovered the Defendant, Roland Griffin, seated

in the driver's seat with the keys in the ignition and the engine running. (Tr. at 20.) Ranger

Lochart identified himself and asked the Defendant why he was parked in the middle of the road.

(Tr. at 20-21.) Griffin replied that he was having trouble with his turn signals, and he then

alternately activated the vehicle's turn signal and four-way flashers.  (Tr. at 21.)  Ranger Lochart noted that the Defendant was not wearing his seatbelt, that there was a strong odor of an alcoholic beverage about the Defendant's person, and that his speech was thick and slurred.  (Tr. at 20, 23, 26.)

Ranger Lochart asked the Defendant if he had consumed any alcohol that day, to which the Defendant replied he had consumed "two beers a couple of hours ago."  (Tr. at 23.)  When Ranger Lochart asked what time that had occurred, the Defendant replied he had consumed "one at nine thirty and one at one thirty," and that he had also taken codeine pills for an abscessed tooth.  (Tr. at 23, 28-29.)  Ranger Lochart then asked if there was any alcohol in the vehicle. The Defendant replied that there was not.  (Tr. at 23.)  When Ranger Lochart asked for the Defendant's license and registration, the Defendant produced a valid Virginia driver's license from his wallet, but he did not initially produce his registration.  (Tr. at 22.)

Ranger Lochart asked the Defendant a second time for his registration.  The Defendant indicated that it was in the glove box, and Ranger Lochart asked the Defendant to retrieve it. The Defendant removed a packet of materials from the glove box, laid it in his lap, and began to search through it.  (Tr. at 23).  The Defendant produced his insurance card and gave it to Ranger Lochart, who replied that he still needed the vehicle registration.  (Tr. at 23.)

Ranger Lochart again asked the Defendant how much he had to drink, to which the Defendant responded "it was the drugs," and that he had taken seven different prescription drugs, but did not recall what they were.  (Tr. at 28, 40.)  The Defendant continued to look through the paperwork in his lap and eventually asked Ranger Lochart, "What is it you wanted to see again?" After Ranger Lochart stated again that he needed the vehicle registration, the Defendant finally

produced it.  (Tr. at 23.)  When Ranger Lochart asked the Defendant yet again if he had

consumed any alcohol that day, the Defendant replied that he had had "one or two beers and two

shots of Jim Beam." (Tr. at 46.)

Based on the Defendant's behavior, Ranger Lochart suspected that he was under the

influence of drugs or alcohol.  He instructed the Defendant to turn off the vehicle, hand over the

keys, and step out of the vehicle to perform several field sobriety tests.  (Tr. at 23-24.)  The

Defendant was unsteady as he approached the rear of the vehicle and asked Ranger Lochart how

fast he was going when he had been stopped.  (Tr. at 24.)

Ranger Lochart administered four field sobriety tests: the horizontal gaze nystagmus; the

walk and turn test; the one leg stand test; and the alphabet test.  The Defendant was unable to

complete any of the tests successfully.  (R. at 24-25.)  Ranger Lochart placed the Defendant

under arrest for suspicion of driving under the influence of alcohol, searched the vehicle, and

discovered a full twelve-pack of beer bottles behind the driver's seat.  (Tr. at 26.)  At that

juncture, the Defendant's wife arrived at the scene and Ranger Lochart explained that the

Defendant had been arrested.  Ranger Lochart turned over the Defendant's wallet and the keys to

the vehicle to the Defendant's wife so that she could operate the vehicle and remove it from the

scene.  (Tr. at 27.)

After the Defendant was transported to the local county sheriff's office, Ranger Katie

Sargent administered a breath test on an Intox EC/IR II.  The Defendant's reading on the EC/IR

II was 0.17 grams per 210 liters of breath.  (Tr. at 28.)  The Defendant was then taken to a local

hospital to have blood drawn and tested at the Virginia Division of Forensic Science.  (Tr. at 28.)

At the hospital, Ranger Lochart read the Defendant his constitutional rights against self-

incrimination, which he waived, and then asked the Defendant again how much he had had to

drink.  The Defendant responded that he had consumed three twenty-ounce beers and taken

several prescription drugs.  (Tr. at 30.)  On August 11, 2009, the Division of Forensic Sciences

completed its analysis of the Defendant's blood, which resulted in a blood alcohol concentration

of 0.20.  (Tr. at 10.)

## II.  ANALYSIS

36 C.F.R. § 4.23(a) prohibits "operating or being in actual physical control of a motor

vehicle" while under the influence of alcohol or drugs.[1]  36 C.F.R. § 1.4 defines "operator" as "a

person who operates, drives, controls, otherwise has charge of or is in actual physical control of

a mechanical mode of transportation or any other mechanical equipment.  Interpreting its own

similar statutes, the Supreme Court of Virginia has ruled that the word "'operate' . . . should

cover an activity in addition to driving."  Gallagher v. Commonwealth, 205 Va. 666, 668-69

(1964).  Thus, the Court held that a defendant who was only accelerating the motor of a vehicle,

which could not move because of a lack of traction, was nevertheless operating the vehicle.  Id.

In determining conduct that might be encompassed within the term "operate any motor vehicle,"

the Court relied upon the definition of "operator" and focused upon the words "actual physical

control" of the motor vehicle.  Id; see also Nicolls v. Commonwealth, 212 Va. 257, 258-59

(1971).

In Williams v. City of Petersburg, 216 Va. 297 (1975), the Virginia Supreme Court

---

[1]  Virginia's DUI statute is very similar to 36 C.F.R. § 4.23, and for that reason, as well
as limited case law in the Fourth Circuit addressing the issue, the Court will consider cases from
Virginia courts construing its statute as "compelling persuasive authority," as a companion court
has noted.  United States v. Coleman, 750 F. Supp. 191, 193 (W.D. Va. 1990).  See Va. Code. §
18.2-266.

4

elaborated upon the term "operate" and held that:

> "[o]perating" not only includes the process of moving the vehicle from one place
> to another, but also includes starting the engine, or manipulating the mechanical
> or electrical equipment of the vehicle without actually putting the car in motion. It
> means engaging the machinery of the vehicle which alone, or in sequence, will
> activate the motive power of the vehicle.

216 Va. at 300.  The evidence in <u>Williams</u> established that a police officer approached a vehicle

which was stopped in a parking lot with the motor running, its windows closed, and its doors

locked.  The accused was slumped over the steering wheel.  Holding that the defendant was

"operating" the vehicle, the Court noted that "[f]rom a mechanical standpoint, [the vehicle] was

capable of being immediately placed in motion . . ., that [the accused] was in actual physical

control of the vehicle and that he had engaged the machinery of the vehicle which alone, or in

sequence, would have activated its motive power." <u>Id</u>.

    At the same time, in two other cases the Virginia Supreme Court ruled that the evidence

failed to prove that the accused was operating a motor vehicle.  In <u>Overbee v. Commonwealth</u>,

227 Va. 238 (1984), the accused was arrested while standing in front of his vehicle with its hood

open.  The engine was not running and the key was in the accused's pocket.  <u>Id</u>. at 243.

Distinguishing <u>Gallagher</u>, <u>Nicolls</u>, and <u>Williams</u>, the Court held that in those cases, the accused

"was in the driver's seat and in control of the vehicle when the police found him." <u>Id</u>.  The

Court held that even if "Overbee's possession of the keys may have given him the means of

effecting control of the truck, . . . [Overbee] cannot be said to have been in actual physical

control of the vehicle when he was standing in front of it on the highway." <u>Id</u>.

    The Virginia Supreme Court also held in <u>Stevenson v. City of Falls Church</u>, 243 Va. 434

(1992), that the accused, who was asleep behind the steering wheel of a parked vehicle, was not

operating the vehicle.  Although the key was in the ignition, "[t]he engine of the motor vehicle,

and all of its other mechanical and electrical parts were off."  Id. at 435.  Discussing "the *extent*

of the accused's activity necessary to constitute "actual physical control" of a vehicle, the Court

noted that:

> [i]n three cases, we have held that a vehicle occupant was in "actual physical
> control" of the vehicle within the meaning of Code § 46.1-1(17) when he was
> seated behind the steering wheel and performed certain acts.  Williams v. City of
> Petersburg, 216 Va. 297, 301, 217 S.E.2d 893, 896 (1975) (ran engine and made
> "motion" to gearshift); Nicolls v. Commonwealth, 212 Va. 257, 258, 184 S.E.2d
> 9, 10 (1971) (activated headlights and heater and ran engine with car in high gear
> but lack of fluid in transmission made car inoperable); Gallagher v.
> Commonwealth, 205 Va. 666, 670, 139 S.E.2d 37, 38 (1964) (accelerated engine
> with car in gear although car immobile because stuck in ditch).

Id. at 437 (footnote omitted).  Although Stevenson was behind the wheel of the vehicle, the

Court held that "[b]ecause the presence of the key in the ignition switch in the off position did

not engage the mechanical or electrical equipment of Stevenson's car, Stevenson did not 'drive

or operate' the car within the meaning of the statutes."  Id. at 438.

In Leake v. Commonwealth, 497 S.E.2d 522 (Ct. App. 1998), the Virginia Court of

Appeals surveyed existing case law on the issue and held that "an accused's presence in or about

a motor vehicle when arrested is insufficient, standing alone, to prove that the accused had

'actual physical control' of the motor vehicle," even if there is sufficient evidence to prove that

the defendant drove to that location at an earlier time.  497 S.E.2d at 107.  In Leake, the evidence

established that a police officer discovered a truck parked on a highway exit ramp with the

engine running, headlights and taillights illuminated, and both doors open.  Id. at 103.  The

defendant was leaning through the passenger door into the passenger compartment of the vehicle

6

when the officer approached, and he explained that he was cleaning his truck.  Id.  Affirming the conviction, the court noted that "presence must be coupled with some other contemporaneous circumstance," such as "moving the vehicle from one place to another," "starting the engine," "manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion," or "engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle."  Id. at 107 (quoting Williams, 216 Va. at 300).

In a case from the Fourth Circuit, United States v. Maccado, 1996 U.S. App. LEXIS 26506 (4th Cir. 1996), the defendant argued that there was insufficient evidence to prove that he "drove or operated a motor vehicle at the time of his arrest." 1996 U.S. App. LEXIS 26506 (4th Cir. 1996), at *1.  Police found the defendant in the driver's seat of a van parked on a highway exit ramp with the key in the ignition, but with the engine turned off.  Id. at *2.  The defendant told police that he had "just pulled over" to wait for his friend and later presented testimony from a third party who claimed to have been driving the van the night of the defendant's arrest.  Id. The third party, however, was not at the scene when police arrived and could describe neither the area where he allegedly parked the van, nor the route he had driven to the scene of the defendant's arrest.  Id.  The Fourth Circuit affirmed the conviction, finding it within the trial court's discretion to credit the defendant's statements and not the contradictory statements of a third party.

In a recent case, Ngomondjami v. Commonwealth, 54 Va. App. 310 (2009), the Virginia Court of Appeals upheld a conviction of driving under the influence when the defendant was found by police asleep in the driver's seat of his car, with the key in the ignition and the engine running.  54 Va. App. at 314-15.  Based on the evidence, a jury could reasonably conclude that

the defendant was in "actual physical control of the car, and was 'operating' it within the meaning of Code § 18.2-266." Id. at 318.

In this case, the evidence establishes that Griffin was "operating" a motor vehicle while under the influence of drugs or alcohol. Ranger Lochart's testimony established that the Defendant was the only occupant of the vehicle and that it was parked in the middle of the road with the keys in the ignition and the engine running. When Ranger Lochart approached the vehicle, the Defendant fumbled with the turn signals and eventually engaged the vehicle's hazard lights. Given such facts, the case is distinguishable from Overbee, in which the defendant was not seated in the vehicle and the engine not engaged, and Stevenson, where the defendant was asleep in his car with the engine turned off. Indeed, the facts in this case fall within the scope of "engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle." Williams, 216 Va. at 300. Based on the Defendant's conduct, he "manipulat[ed] the mechanical or electrical equipment of the vehicle without actually putting the car in motion" sufficient to establish operation of the vehicle. Leake, 497 S.E.2d at 107.

The Defendant presented evidence at trial that his son had driven the car to the location where Ranger Lochart discovered it, but that the son had abandoned it, with the enginee running, to walk home, leaving the Defendant in the vehicle's passenger seat. The Defendant argues that, because he had not driven the car, the evidence is not sufficient to support a conviction of driving under the influence. However, the Defendant "operated" the vehicle regardless of whether he actually moved the car after his son abandoned it, even if the son's testimony is accepted as true. When Ranger Lochart discovered the Defendant, he had moved from the passenger seat to the driver's seat. Based on Ngomondjami, the Defendant's presence in the

driver's seat of the vehicle with the engine running is sufficient to establish operation, regardless of whether he drove it anywhere.  Moreover, the Defendant succeeded in activating the hazard lights of the vehicle while Ranger Lochart was present, which also falls within Leake's definition of "operation" as manipulation of the "mechanical or electrical equipment of the vehicle without actually putting the car in motion."  497 S.E.2d at 107.  In addition, the facts in this case support a finding that the Defendant operated the vehicle when compared with Maccado, the only Fourth Circuit case on the precise issue involved.  In Maccado, the defendant was discovered in the driver's seat with the engine turned off, whereas in this case the engine was on and the Defendant took steps to activate the electrical equipment of the vehicle.[2]  1996 U.S. App. LEXIS 26506, at *2.

### III.  CONCLUSION

Based on the totality of the evidence, the Defendant was in actual physical control of the vehicle and operated it within the definition of 36 C.F.R. § 4.23.  When the Defendant seated himself in the driver's seat with the engine running and subsequently operated the vehicle's turn signals and hazard lights, he "engag[ed] the machinery of the vehicle" within the meaning of the term "operate" as defined by 36 C.F.R. § 4.23.  Williams, 216 Va. at 300.

For the reasons discussed herein, Defendant's motion for a judgment of acquittal (Docket No. 23) is DENIED.

---

[2] Because the Court finds that the Defendant operated the vehicle regardless of whether his son's testimony about driving the vehicle is credible, it will not consider the credibility of the Defendant's son as the court in Maccado evaluated the credibility of the alleged third party driver.  See Maccado, 1996 U.S. App. LEXIS 26506, at *2.  Furthermore, the Court need not consider whether the Defendant's question about how fast he was going when Ranger Lochart stopped him is an implied admission that he had been driving.  See id.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated:    December 1, 2009